UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORRAINE MICHELE H.,

                            Plaintiff,

v.                                                      5:21-cv-00013 (MAD/TWD)

COMM'R OF SOC. SEC.,

                            Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 S. Clinton St., Ste. 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION                  LUIS PERE, ESQ.
OFFICE OF THE GENERAL COUNSEL                    PAUL NITZE, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

     Lorraine Michele H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the Commissioner of Social Security's ("Defendant" or

"Commissioner") denial of her request for Disability Insurance Benefits.  (Dkt. No. 1.)  Both

parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule

12(c) in accordance with General Order 18.  (Dkt. Nos. 11, 16.)  For the reasons set forth below,

the Court recommends that Plaintiff's motion be denied, Defendant's motion be granted, and the

Commissioner's decision be affirmed.

I.     BACKGROUND

Plaintiff was born in 1987, completed college in 2009, and worked for seven years as an office assistant and recruiter.  (T. at 42-43.[1])  On March 1, 2018, Plaintiff protectively filed a Title II application for Disability Insurance Benefits, alleging disability beginning August 28, 2017, due to rheumatoid arthritis and depression.  (T. at 65-66, 214, 238.)  Plaintiff's initial claim was administratively denied and again denied upon reconsideration.  *Id*. at 91, 101.  A hearing was conducted on February 4, 2020, before Administrative Law Judge ("ALJ") Elving L. Torres, during which Plaintiff and a vocational expert testified.  *Id*. at 38-74.  On April 1, 2020, ALJ Torres issued an unfavorable decision, which became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 2, 2020.  *Id*. at 1-6, 15-26.  Plaintiff commenced this action on January 5, 2021.  (Dkt. No. 1.)

II.    STANDARD OF REVIEW

A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein. Citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working.
*Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Applying the five-step disability sequential evaluation, the ALJ determined Plaintiff had not engaged in substantial gainful activity since August 28, 2017, the alleged onset date.  (T. at 17.)  At step two, the ALJ found Plaintiff had the severe impairments of history of rheumatoid arthritis, cervical spine disc bulge with mild stenosis and herniated nucleus pulposus ("HNP") at C5-6 level, and recent moderate kidney disease from nonsteroidal anti-inflammatory drugs ("NSAIDs").  *Id.* at 18.  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 21.  Before reaching step four, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> She can frequently climb, balance, stoop, kneel, crouch, and crawl; can never climb ladders, scaffolds, ropes, or at open unprotected heights; can stand and/or walk for about six hours in an eight-hour workday and can sit for about six hours in and eight-hour workday, each position considering the standard breaks; and must avoid extreme heat, extremely loud noise work environment, extreme vibrations, and direct extreme bright lights, such as strobe or flashing lights.

*Id.* at 20.  At step four, the ALJ found Plaintiff could perform her past relevant work as an office

assistant and recruiter.  *Id.* at 25.  Thus, the ALJ determined Plaintiff has "not been under a

disability, as defined in the Social Security Act, from August 28, 2017, through the date of th[e]

decision[.]"  *Id.* at 40.

## IV.    CONTENTIONS

Plaintiff raises three arguments in her brief: (1) the ALJ's determination is unsupported

by substantial evidence because the ALJ failed to address Plaintiff's impairment of migraines,

much less properly consider whether Plaintiff's migraines medically equaled Listing 11.02(B);

(2) the ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to

properly address the treating opinions of Gina Raptoulis, D.O., and Jean-Raphael Schneider,

M.D., in accordance with the prevailing rules and regulations; and (3) the ALJ's step two

determination that Plaintiff did not have a severe mental impairment is unsupported by

substantial evidence.  (Dkt. No. 11 at 11-21.)  In response, the Commissioner contends

substantial evidence supports the ALJ's findings at step two and the ALJ's RFC determination is

supported by substantial evidence.  (Dkt. No. 16 at 5-17.)

## V.    DISCUSSION

### A.    The ALJ's Evaluation of Plaintiff's Migraines

As noted, Plaintiff argues substantial evidence does not support the Commissioner's

determination because the ALJ failed to address Plaintiff's impairment of migraines.  (Dkt. No.

11 at 11-13.)  Plaintiff submits this error is harmful because the record evidence and Dr.

Schneider's opinion support finding Plaintiff's migraines were of such severity to meet Listing

11.02(B).  *Id.* at 13-15.  The Commissioner counters Plaintiff cannot show prejudicial error

resulting from the ALJ's consideration of her migraines because the ALJ considered Plaintiff's

migraines throughout his decision and Plaintiff's impairments do not meet or medically equal Listing 11.02(B).  (Dkt. No. 16 at 2, 5-6, 9-12.)

### 1.    Medically Determinable Impairment

To be found disabled, a claimant must show that he is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. §§ 404.1505(a), 416.905(a).  "Consequently, only impairments that are 'medically determinable impairments' can be considered in the disability analysis."  *Flower v. Comm'r of Soc. Sec.*, No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018).

In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques.[3]  Therefore, a physical or mental impairment must be established by objective medical evidence[4] from an acceptable medical source."  20 C.F.R. §§ 404.1521, 416.921; *id.* §§ 404.1529, 416.929; *Woodard v. Berryhill*, No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018) (internal quotation marks, citations and brackets omitted).  Furthermore, the evidence must "show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529(b), 416.929(b).  The existence of a

---

[3] Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests.  20 C.F.R. §§ 404.1502(c), 416.902(c).

[4] Objective medical evidence means signs, laboratory findings, or both.  Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  20 C.F.R. §§ 404.1502(f-g), 416.902(f-g).

medically determinable impairment is not established by a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]" *Id*. A claimant bears the burden of establishing that he or she has a medically determinable impairment. *Woodard v. Berryhill*, 2018 WL 3536084, at *4.

Whether something is considered a medically determinable impairment is influential to the remainder of the decision because "only medical determinable impairments can be considered severe or non-severe, [and] only limitations stemming from severe and non-severe impairments are considered in formulating an RFC." *Talbot v. Colvin*, No. 3:13-CV-1249 (GTS), 2015 WL 5512039, at *6 (N.D.N.Y. Sept. 15, 2015).

A harmless error analysis does not ordinarily apply to an ALJ's failure to find a condition to be a medically determinable impairment. *See John B. v. Kijakazi*, No. 1:20-CV-1310 (ATB), 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) ("Where an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate.") (collecting cases explaining the same); *see also Showers v. Colvin*, No. 3:13-CV-1147 (GLS), 2015 WL 1383819, at *8 (N.D.N.Y. Mar. 25, 2015) (explaining harmless error analysis was inapplicable at the medically determinable stage where the plaintiff's mental impairments were excluded and were never considered at subsequent evaluative steps or when formulating the plaintiff's RFC).

In Plaintiff's application for benefits she listed the following medical conditions as those that limit her ability to work: rheumatoid arthritis and depression. (T. at 65-66.) At the reconsideration level, she reported experiencing an increase in symptoms including, *inter alia*, "migraines (eye pain/pressure, nausea, sensitivity to light, sensitivity to noise, need to rest 1-3 hours in a dark room), headaches (lasting 1-3 hours)," and fatigue. *Id*. at 78, 311, 319.

Although the ALJ did not reference Plaintiff's migraine condition at step two, he discussed her migraine headaches as part of the RFC determination. *Id*. at 18-24. To that end, the ALJ noted Plaintiff "alleged a variety of symptoms stemming from rheumatoid arthritis, including migraines, fatigue, loss of grip strength, lightheadedness, reduced range of motion, muscle spasms, nausea, vomiting, numbness, stiffness, swelling, tingling, tremors, sensitivity to light, and sensitivity to noise," but found the "majority of these allegations appear to be overstated." *Id*. at 21.[5] The ALJ referenced the October 2017 magnetic resonance image ("MRI") of Plaintiff's brain that showed no recent brain infarct and only a "few tiny" nonspecific white matter foci, while was later characterized as "essentially normal" by Plaintiff's providers. *Id*. at 22. The ALJ also discussed Plaintiff's treatment notes and subjective complaints:

> The claimant began reporting additional headaches in 2019 and described them as a 10 on a 10 point scale, lasting up to eight hours each time. While objective evidence to corroborate such claims is limited, the claimant was prescribed Topiramate twice daily, after which the claimant reported that her headaches were "improved."

*Id*. at 23. The ALJ wrote the following about Dr. Schneider's opinion:

> the opinion appears extremely overstated as it is unsupported by medical evidence. The opinion finds that the claimant is unable to work at all during the day due to migraines (Exhibit B11F). The opinion is unsupported by the treatment records, which show that her treatment for migraines was fairly effective. In addition, it is also inconsistent with that evidence. Therefore, the undersigned found this opinion unpersuasive.

*Id*. at 24.[6]

---

[5] Plaintiff does not challenge the ALJ's evaluation of symptoms.

[6] The ALJ described the author's signature as "illegible" and noted accompanying forms indicated the author was either Dr. Schneider or nurse practitioner Dawn Rush Wilde. (T. at 24, 613-17.) Plaintiff refers to the September 2019 opinion as Dr. Schneider's while the Commissioner refers to the opinion as Ms. Rush-Wilde's. (Dkt. No. 11 at 10; Dkt. No. 16 at 10-12, 15-16.) Plaintiff treated with Dr. Schneider and Ms. Rush-Wilde at the MS &

Notably, when crafting Plaintiff's RFC, "[i]n addition and out of an abundance of caution," the ALJ "included additional restrictions to fully accommodate any residual symptoms" such as "limitations to avoid extreme heats, extremely loud noise, extreme vibration, and extreme bright lights, such as strobe lights." *Id*.

On this record, inasmuch as the ALJ's decision demonstrates consideration of Plaintiff's migraines throughout, including reported symptoms, treatment, and objective findings, any error at step two was harmless. Moreover, even assuming it was error for the ALJ to conclude Plaintiff's migraines were not severe, it also was harmless. "Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage." *Kenneth H. v. Comm'r of Soc. Sec.*, No. 6:21-CV-324, 2022 WL 2954364, at *5 (N.D.N.Y. July 26, 2022) (quoting *Howard v. Comm'r of Soc. Sec.*, 203 F. supp. 3d 282, 297 (W.D.N.Y. 2016) (collecting cases)). As discussed, the ALJ continued beyond step two and discussed Plaintiff's migraines as part of his RFC determination. Accordingly, remand is not warranted on this basis.

## 2.    Listing

Plaintiff contends the ALJ erred by not evaluating whether her migraines meet Listing 11.02(B). (Dkt. No. 11 at 13-15.) The Commissioner argues Plaintiff does not meet or medically equal Listing 11.02(B) and any error at step three was harmless. (Dkt. No. 16 at 9-12.)

---

Neuromuscular Center of Excellence. The Court is inclined to agree with Plaintiff that the opinion was in fact authored by Dr. Schneider, as evidenced by the "M.D." after the "illegible" signature, and, when compared to other records displaying Ms. Rush-Wilde's signature, followed by "ARNP". The Court will refer to the September 2019 opinion as Dr. Schneider's throughout this report-recommendation.

At step three, "the ALJ must consider all relevant evidence in [the] case record' in determining whether a listing has been met or equaled under step three." *Brittany F. v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-1365 (ATB), 2020 WL 838076, at *4 (N.D.N.Y. Feb. 19, 2020) (quoting *Graf v. Berryhill*, No. 3:18-CV-93, 2019 WL 1237105, at *4 (D. Conn. Mar. 18, 2019)). "Additionally, the ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Graf*, 2019 WL 1237105, at *4. "It is well settled that '[w]here the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings." *Brittany F.*, 2020 WL 838076, at *4 (quoting *Kovacevic v. Chater*, No. 94-CV-600, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995)) (additional citations omitted). If "the ALJ failed to adequately 'address or explain why he rejected substantial conflicting record evidence [at step three],'" he will have committed legal error. *Id.* at *5 (quoting *Cepeda v. Berryhill*, No. 18-CV-7304, 2019 WL 7483937, at *14 (S.D.N.Y. Dec. 12, 2019), *report-recommendation adopted*, 2020 WL 58236 (S.D.N.Y. Jan 6, 2020)).

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Id.* "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence." *Andrea K. v. Comm'r of Soc. Sec.*, No.

1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted);
*see also Elizabeth G. v. Comm'r of Soc. Sec.*, No. 8:21-CV-411 (CFH), 2022 WL 1689551, at
*16 (N.D.N.Y. May 26, 2022) ("[a]n ALJ's [step three determination based on a deficient
analysis] may be upheld where other portions of the decision and other 'clearly credible
evidence' demonstrate that the conclusion is supported by substantial evidence.") (alteration in
original) (citation omitted).

Here, the Court agrees with Plaintiff that the ALJ's step three analysis was sparse in that
the ALJ did not specifically mention Listing 11.02(B), or any listing for that matter, but stated
Plaintiff's impairments did not, individually or in combination, meet or medically equal one of
the listed impairments.  (Dkt. No. 11 at 13-14.; T. at 20.)  Nevertheless, the ALJ's failure to
explicitly evaluate whether the claimant was disabled under Listing 11.02(B) amounts to, at
most, harmless error.

To satisfy Listing 11.02(B), migraine headaches must occur at least once a week for at
least three consecutive months despite compliance with treatment.[7]  20 C.F.R. Pt. 404, Subpt. P,
App. 1, Listing 11.02.  Plaintiff argues her migraines, "which the ALJ never considered in his
decision, provided evidence supporting this listing.  Specifically, it was noted multiple times in
the record that Plaintiff had migraines at least once per week that would last up to eight hours."
(Dkt. No. 11 at 14.)  Plaintiff points to two such records from September 24, 2019, and January
7, 2020, documenting weekly migraines and surmises "this would necessitate [her migraine
headaches] lasted for three and a half months, more than the requisite '3 consecutive months.'"
*Id*. (citing T. at 673, 688).  Plaintiff also contends Dr. Schneider's opinion, submitted September

---

[7] "Headache disorders such as migraines are not an individually Listed Impairment, but the
Commissioner considers Epilepsy (Listing 11.02) to be the most closely analogous Listed
Impairment."  *Andrea K.*, 2021 WL 1224049, at *8 n.7 (citations omitted).

24, 2019, supports finding Plaintiff's migraines would meet this listing because he indicated she had several migraines per week. *Id*. at 14-15. The Court disagrees.

Here, Plaintiff has failed to establish the frequency of migraine headaches to meet Listing 11.02(B). Although treatment records from MS & Neuromuscular Center indicate Plaintiff reported weekly migraines on September 24, 2019, and January 7, 2020, when visiting another provider in November 2019, Erika Hanson, PA-C, Plaintiff reported that her migraines resolved with Sumatriptan, and denied any recent migraine symptoms. (T. at 685.) As there is no evidence demonstrating Plaintiff's migraine headaches occurred at least once a week for at least three consecutive months despite compliance with treatment, Plaintiff does not meet Listing 11.02(B) and any error at step three was harmless. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02(B); *see Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) ("Although we have cautioned that an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'") (citation omitted). Accordingly, remand is not warranted on this ground.

    **B.    Evaluation of Treating Opinions**

Next, Plaintiff claims the ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to properly address the opinions of Dr. Raptoulis and Dr. Schneider. (Dkt. No. 11 at 16-19.) In response, the Commissioner contends the ALJ's RFC determination and evaluation of opinions is supported by substantial evidence. (Dkt. No. 16 at 12-16.)

Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability and consistency, the author's relationship with the claimant and specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id*. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for all of the medical opinions in the record. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2). "If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report-recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).

### 1.    Dr. Raptoulis' Opinion

Dr. Raptoulis submitted a medical opinion in August 2019, and noted a history of joint pain, swelling, and tenderness, morning stiffness, limitation of motion in joints, positive serum rheumatoid factor, and radiographic changes typical of inflammatory arthritis.  (T. at 582-84.) She opined Plaintiff has a "moderate" limitation of activities of daily living and an "extreme" limitation in maintaining social functioning because she "doesn't do anything [or] go anywhere because of [her arthritis]."  *Id*. at 583.  The ALJ addressed this opinion and found it unpersuasive, reasoning that it was "generic checkbox form with little narrative" and "contrary to the physical examinations . . . in which the claimant had no positive tender points, no swelling, and full range of motion" and, therefore, "inconsistent with the claimant's clinical findings."  *Id*. at 24.  As such, the Court finds the ALJ properly articulated his consideration of the supportability and consistency of Dr. Raptoulis' opinion.

Nevertheless, Plaintiff argues the ALJ's explanation is based on a "flawed understanding of the record."  (Dkt. No. 11 at 17.)  The Court disagrees.  Indeed, as outlined further herein, the ALJ accurately and reasonably surveyed the medical record.  (T. at 20-24.)

To that end, the ALJ discussed that MRIs of Plaintiff's right wrist and hand in October 2017 were mostly normal, showing only mild synovitis and erosion.  *Id*. at 484-85.  In April 2018, she had 5/5 muscle strength in the upper and lower extremities, with 5/5 and equal grip strength bilaterally.  *Id*. at 535.  She had no focal neurological deficits, walked with a normal gait, and had "few" tender points.  *Id*.  She had full range of motion in the neck, shoulders, elbows, wrists, fingers, hands, thoracic spine, lumbar spine, hips, and ankles.  *Id*.  There was no sign of impingement, no effusion, and no muscle spasms.  *Id*.

In July 2018, she complained of knee pain, hand pain, weakness, and difficulty walking. *Id.* at 565, 569. However, on exam, she had no joint swelling and showed 5/5 grip strength bilaterally, full range of motion, negative straight leg raises, and no tender points. *Id.* at 570-71. Her cranial nerves, deep tendon reflexes, and sensation were all intact. *Id.* She demonstrated a normal gait. *Id.*

Subsequent records indicate she denied any joint pain in March 2018, September 2018, May 2019, and November 2019. *Id.* at 587-591. In September 2018, May 2019, August 2019, and November 2019, she denied any weakness, vomiting, nausea, or fatigue. *Id.* 585-89. A cervical spine MRI obtained in August 2019 showed cervical disc bulges at multiple levels with mild stenosis and HNP at C5-6, but no impingement. *Id.* at 731.

A physical examination in November 2019 showed 5/5 muscle strength and normal grip strength, as well as no focal deficits with intact sensation to light touch, normal deep tendon reflexes, and intact cranial nerves. *Id.* at 689. She had no tender points. *Id.* She had full range of motion in the cervical, thoracic, and lumbar spine, as well as full range of motion in the shoulders, elbows, wrists, fingers, hands, hips, and ankles. *Id.*

Plaintiff contends the foregoing is a "mischaracterization of the record" because it was repeatedly noted she had "positive synovitis of her wrists, hands, and fingers." (Dkt. No. 11 at 17 (citing T. at 437, 440, 444, 449, 458-59, 485, 571, 689, 693, 701, 705, 711, 716, 721, 729).) She also points outs it was repeatedly notes she had tenderness to her wrists, hands, and fingers. *Id.* (citing T. at 437, 440, 444, 449, 458-59 ,485, 571, 689, 693, 701, 705, 711, 716, 721, 729.) Plaintiff asserts the ALJ is not permitted to ignore the positive findings and mischaracterize the evidence of record to support his conclusion. *Id.* However, even if treatment notes provide support for Plaintiff's view of the medical evidence, it is not the Court's function to reweigh the

evidence on appeal, only to "decide whether substantial evidence supports the ALJ's decision." *Tammy S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-00156 (MAD), 2022 WL 3444968, at *5 (N.D.N.Y. Aug. 17, 2022) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)).

Here, the Court finds that ALJ properly considered this opinion evidence in accordance with 20 C.F.R. § 404.1520c. As discussed, physical examinations of Plaintiff showed that she frequently demonstrated a full range of motion in her upper extremities, good grip strength, and normal finger and hand dexterity. While Plaintiff also has evidence in the record supporting "trace" or "mild" synovitis and tenderness of the wrists, hands, and fingers, they do not indicate significant swelling of Plaintiff's hands, and treatment records indicate "few" or no tender points. Thus, the ALJ's evaluation of the medical record does not amount to a mischaracterization requiring remand and the Court will not reweigh the evidence. *See Cepeda v. Comm'r of Soc. Sec.*, No. 19-CV-4936 (BCM), 2020 WL 6895256, at *8 (S.D.N.Y. Nov. 24, 2020) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than interpretation.").

Additionally, Plaintiff has not met her burden of proving the need for a more restrictive RFC.[8] It was, in any event, for the ALJ to resolve conflicts in the medical record. *Veino v.*

---

[8] In any event, "[c]ourts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work." *Renee L. v. Comm'r of Soc. Sec.*, 5:20-CV-00991 (TWD) 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) (collecting cases). As to the opined "extreme" limitation in social functioning, there is no support in Dr. Raptoulis' treatment notes, and it is inconsistent with other treatment records indicating normal interactive behavior during appointments, traveling and spending time with her family, participating in activities while on vacation, and having contact with a friend. (T. at 627, 629, 631, 639, 645, 653.)

*Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Because a rational decisionmaker would not be compelled to reach a different conclusion when considering the evidence here, Plaintiff has not shown the ALJ's finding lacks the support of substantial evidence.  *Brault*, 683 at 448.

In sum, the record demonstrates the ALJ properly considered this opinion and remand is not warranted on this basis.  (*See also* Dkt. No. 16 at 12-16.)

### 2.    Dr. Schneider's Opinion

Dr. Schneider completed a medical source statement in September 2019, in which he reported Plaintiff's migraine headaches cause nausea, vomiting, irritability, photophobia, and increased sensitivity to noise.  (T. at 614.)  He indicated Plaintiff experiences several migraines per week and opined Plaintiff would be absent or unable to complete a normal workday four to eight days per month, would be off-task fifty percent of the workday, and would frequently have pain severe enough to interfere with her ability to attend and concentrate.  *Id*. at 616.  As discussed above, the ALJ found Dr. Schneider's opinion unsupported and inconsistent with treatment records, "which show that her treatment for migraines was fairly effective."  *Id*. at 24.[9] Initially, the Court finds the ALJ properly articulated his consideration of the supportability and consistency of this opinion.

However, Plaintiff contends the ALJ mischaracterizes the record because while Plaintiff's migraines did improve with medication, she still felt a "worsening of her headaches" and had them at least once per week.  (Dkt. No. 11 at 18.)  Plaintiff argues the ALJ's assessment of Dr. Schneider's opinion is harmful because her migraine headaches were still of "listing level

---

[9] As noted, the ALJ assessed the signature as "illegible" and stated it was either from Dr. Schneider or Ms. Rush-Wilde.  (T. at 24.)

severity" and demonstrate Plaintiff is unable to perform full time work on a regular and continuing basis. *Id.* Again, the Court disagrees.

As discussed above, the Court finds Plaintiff's migraine headaches do not meet Listing 11.02(B) because the record fails to demonstrate they occur "at least once a week for at least three consecutive months despite compliance with treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02. Indeed, Plaintiff's treatment specific to her migraine condition is limited.

To that end, in September 2018, Plaintiff presented to MS & Neuromuscular Center and complained of weekly migraine headaches with an onset date of June 2018. (T. at 680.) She described associated symptoms of phonophobia, nausea, vomiting, and lightheadedness. *Id.* Plaintiff reported the headaches can be a 10 out of 10, and can last for up to eight hours. *Id.*

In September 2019, she returned for her migraines and reported they could last up to eight hours and occurred at least once a week. *Id.* at 673. The encounter note indicates she was proscribed Topiramate twice daily, and "reported a reduction from her daily migraines to 1-2 migraines a week. There are still severe, and occur 4-8 days per month. These disrupt her functioning." *Id.* She was assessed with chronic intractable migraine without aura, and migraine. *Id.* at 675. She was also prescribed Sumatriptan 50 mg. *Id.* at 672. She was to return in three months. Then, in November 2019, when visiting another provider, Plaintiff reported that her migraines resolved with Sumatriptan, and denied any recent migraine symptoms. *Id.* at 685.

During her January 2020 follow-up appointment, Plaintiff reported her migraines had "improved" with Topiramate, but was having an increase in migraines, at least 5-6 per month, with photophobia, phonophobia, nausea, and vomiting. *Id.* at 668. It was noted Sumatriptan 50 mg was "usually helpful without side effects but does not always resolve her headaches." *Id.* Her prescription for Sumatriptan was increased to 100 mg. *Id.*

The aforementioned records constitute the sum of Plaintiff's treatment as it pertained to her migraine condition. In arriving at Plaintiff's RFC, the ALJ is tasked with the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination that is consistent with the evidence as a whole. *See Camarata v. Colvin*, No. 6:14-CV-0578 (MAD), 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). Here, the ALJ was not persuaded by Dr. Schneider's work-preclusive opinion related to Plaintiff's migraine headaches, insofar as it appeared "extremely overstated", was unsupported by treatment records, which showed "treatment for migraines was fairly effective" and was inconsistent with the evidence. *Id*. at 24. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (finding no error by ALJ in declining to include limitations to being off task and/or attendance in RFC determination, where substantial evidence supported the ALJ's assignment of weight and rejection of treating physician's restrictive limitations).

Based on the foregoing, the ALJ did not err in rejecting Dr. Schneider's restrictive limitations relative to time off-task and absenteeism, as this opinion was not supported by substantial evidence. Accordingly, and based on the ALJ's evaluation of the record evidence as a whole, the ALJ was not compelled to include limitations relative to these functions in her RFC determination. *Robert L. v. Saul*, No. 8:19-CV-415 (MAD), 2020 WL 1689886, at *10 (N.D.N.Y. Apr. 7, 2020) ("Plaintiff ignores the fact that he has the burden of showing limitations beyond those described in the RFC"). Additionally, the ALJ included additional restrictions in the RFC to accommodate any residual symptoms. (T. at 21.) Because the ALJ's evaluation of the evidence and ultimate RFC determination is supported by substantial evidence, remand is not warranted on this basis. (*See also* Dkt. No. 16 at 12-16.)

## C.    The ALJ's Evaluation of Plaintiff's Mental Impairment

Plaintiff maintains the ALJ erred by determining she did not have a severe mental impairment at step two.  (Dkt. No. 11 at 19-21.)  The Commissioner contends substantial evidence supports the ALJ's findings at step two.  (Dkt. No. 16 at 5-12.)

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.  *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)).  Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment[.]"  SSR 85-28, 1985 WL 56856, at *3 (1985).  However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe.  *Id*.  The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone.  *Id*.

The step two analysis "may do no more than screen out *de minimis* claims."  *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).  If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five.  *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone.  *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment,

if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923;

*Dixon*, 54 F.3d at 1031.

As discussed, the ALJ found Plaintiff's history of rheumatoid arthritis, cervical spine disc

bulge with mild stenosis and HNP at C5-6 level, and recent moderate kidney disease from

NSAIDs to be severe.  (T. at 18.)  The ALJ also considered Plaintiff's mental impairments of

adjustment disorder with mixed depression and anxiety, considered singly and in combination,

but concluded that these did not rise to the level of severe impairments because they do not cause

more than minimal limitation in her ability to perform basic mental work activities.  *Id*.

More specifically, the ALJ considered the paragraph B criteria of the mental listings, and

found Plaintiff had no more than mild limitations across those limitations.  *Id*. at 18-19.[10]  The

ALJ also considered the largely conservative nature of Plaintiff's mental health treatment

history, her generally normal clinical findings on examination (notations of normal mood, affect,

judgment, and insight), and daily activities (including driving, socializing, shopping, preparing

simple meals, and handling her personal finance), that are not indicative of greater limitations.

*Id*. at 402, 416, 419, 436-37, 440, 444, 449, 454, 458, 462, 496, 498, 571.  That determination is

also supported by administrative medical findings of David Clay, Ph.D., who reviewed the

medical record in June 2018 and reached the same conclusion.  *Id*. at 70.  On reconsideration in

July 2018, Renee McPherson-Salandy, Ph.D., affirmed the non-severity determination of Dr.

Clay, and provided a lengthy narrative, with citation to Plaintiff's treatment records.  *Id*. at 83-

84.  This evidence provided a reasonable basis for the ALJ's step two determination as well as

his RFC assessment.  *See LaClair v. Colvin*, No. 12-CV-816, 2013 WL 5218067, at *2

---

[10] The ALJ found no limitations in understanding, remembering, or applying information.  (T. at
18.)

(N.D.N.Y. Sept. 16, 2013) (explaining that unremarkable mental status examinations and the ability to groom, cook, shop, clean, and manage money supported the finding that a mental impairment was not severe).

Moreover, in evaluating the evidence in the record, the ALJ discussed the prior administrative findings, as well as evidence of subsequent diagnosis and treatment in general. (T. at 18-20.)  Plaintiff fails to demonstrate the subsequent evidence provided greater functional limitations than found by the ALJ.  Therefore, contrary to Plaintiff's argument, the administrative findings were not rendered "stale"[11] by subsequent evidence in the record.  (Dkt. No. 11 at 19-20.)

To the extent Plaintiff complains the only evidence the state agency consultants reviewed were from "providers who were not specialists in mental impairments", the record demonstrates Plaintiff did not receive "specialized mental health treatment" until late 2018 when she started counseling with Michelle Hart Aletkin, MSW, LCSW.  (Dkt. No. 11 at 19-20.)  Even then, the treatment records cited by Plaintiff do not support a material deterioration of Plaintiff's mental symptoms or demonstrate significant social limitations or difficulty interacting with others.  (*See*

---

[11] A medical opinion may be rendered stale if it does not account for a plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *see Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (consultative physician's opinion was not rendered stale on the basis of subsequent treatment records and the submission of additional physician's opinions where the opinions were consistent and did not evidence the plaintiff's significant deterioration); *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of ... [the] opinions such that they were rendered stale or incomplete"); *Ronald S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1688-DB, 2022 WL 3716568, at *19 (W.D.N.Y. Aug. 29, 2022) ("Where the submitted evidence did not directly contradict a doctor's opined limitations and further the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale.").

T. 627, 629, 653.)  For example, in November 2018, Plaintiff was noted to have dysphoric mood, but other findings were normal, including "interactive" interpersonal behavior.  *Id*. at 627. Plaintiff told Ms. Aletkin that she "is able to get herself out of the house for appointments or if family is visiting but other than that she has decreased motivation."  *Id*.  Three weeks later, Plaintiff told Ms. Aletkin that she "made an effort" to participate in Thanksgiving with her husband's family, but "at times she just didn't feel good and had to go to her room to lie down." *Id*. at 629.  She stated she preferred to spend holidays with her family and traveled the next month, while her husband stayed home.  *Id*. at 639.

Plaintiff also points to Dr. Raptoulis' opinion that Plaintiff had extreme limitation on her ability to function socially, which "certainly suggests Plaintiff had far more then mere minimal limitations."  (Dkt. No. 11 at 20.)  However, Dr. Raptoulis indicated Plaintiff "doesn't do anything [or] go anywhere [because of her arthritis]", not because of her anxiety or depression. (T. at 583.)  In any event, the ALJ was not persuaded by Dr. Raptoulis' opinion.  *Id*. at 24.

In sum, the ALJ's analysis at step two and beyond provides sufficient explanation indicating that he reasonably and adequately considered the evidence related to Plaintiff's alleged impairments, including those he found to be not severe.  (T. 18-20.)  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013).  Therefore, substantial evidence supports the ALJ's conclusions at step two and remand is not warranted on this basis.

**WHEREFORE,** based on the findings above, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **GRANTED**; and it is further

**RECOMMENDED** that the Commissioner's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   September 13, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge